FILED

October 16, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 3:00 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Robert W. Driver,** | ) | **Docket No. 2016-06-2328** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Triumph Group, Inc.,** | ) | **State File No. 43355-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **Liberty Mut. Ins. Corp.,** | ) | **Judge Joshua Davis Baker** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court on September 20, 2017, on Mr. Driver's Request for Expedited Hearing. The present focus of this case is his entitlement to a panel of orthopedists. For the reasons provided below, the Court grants his request.

### History of Claim

Mr. Driver, a machinist, fell over a board when walking to his work area inside a dimly lit building at Triumph Group on February 10, 2016. He "hit the floor hard" and required time to compose himself before accepting assistance from co-workers to stand. At the suggestion of the building's supervisor, he went directly to the on-site first-aid treatment Triumph offered through Premise Health Employer Solutions, LLC.

At Premise, Mr. Driver signed a choice of physician form to receive care there. He met with Nurse Practitioner Amanda Austin, who noted swelling in his right knee. She diagnosed pre-existing arthritis and right knee and hip contusions and recommended ice application and Ibuprofen. She instructed him to return to the clinic "tomorrow for ice therapy." Although undocumented, Mr. Driver testified he returned the following day as instructed.

1

Mr. Driver stated he was asymptomatic before falling but endured noticeable symptoms post-accident. Mr. Driver's wife testified that he had no knee problems before his injury; but now he complains about right knee pain, takes over-the-counter medication, limps, and compensates for his disabled knee. Coworker James Tidwell, who witnessed Mr. Driver's fall and saw him every workday, reiterated that Mr. Driver did not limp or complain about knee pain before his fall; but when Mr. Driver stood up from the fall, "he was favoring that right knee" and limped at work afterward. Mr. Driver said he kept working after his injury but constantly endured right knee pain and swelling that was not present before his fall.

Mr. Driver testified that during at least two more undocumented visits from March to May, NP Austin continued dismissing his right knee complaints as pre-existing arthritis and a contusion, despite ongoing pain and noticeable swelling. She insisted his recovery could take six months because of age and arthritis. Mr. Driver then consulted his family doctor, who recommended an MRI. Mr. Driver relayed his doctor's MRI recommendation to NP Austin. According to Mr. Driver, NP Austin became angry and refused to order an MRI.

Mr. Driver testified he finally insisted on treatment saying he could no longer give NP Austin the benefit of the doubt with his retirement looming. He further stated he refused to use his personal health insurance in a "false way" to treat his work injury. NP Austin documented his frustration, recording that he insisted his knee should be treated on his "employer's dime" rather than his own.

Dr. R. Lane Tippens, Premise's physician, met Mr. Driver for the first time nearly five months post-accident. Mr. Driver spent less than thirty minutes with Dr. Tippens, who noted unresolved swelling and recommended an MRI.

After viewing the MRI results, Dr. Tippens diagnosed two meniscal tears "with a background of marked degeneration, cartilage loss and popliteal cyst." He concluded the tears were unrelated to the fall because Mr. Driver never mentioned twisting or contorting his leg when describing the accident. Dr. Tippens decided that "given his chronic pre-existant [sic] arthritis causality would be in question." He continued, "I personally believe that his work event would not account for 51% or greater of his current knee pathology." Triumph then denied Mr. Driver's claim.

Dr. Tippens testified that he relied upon NP Austin's notes, Mr. Driver's failure to mention twisting or torsion, and the "lag time" between the date of injury and his examination to reach his conclusion that the meniscal tears were degenerative rather than acute. When confronted about not examining Mr. Driver until nearly five months after being selected as the authorized physician, Dr. Tippens responded, "My eyes and ears saw him; I trust my nurse practitioner."

Following Triumph's denial, Dr. Robert P. Landsberg, an orthopedic surgeon, examined Mr. Driver, noted the meniscal tears, and concluded the work injury caused Mr. Driver's condition. He reported, "Had it not been for the work injury he would not have problems with the knee." Further, while "the left knee has similar radiographic findings" regarding degenerative and arthritic conditions, "he is asymptomatic with the left knee." Dr. Landsberg noted "mild pre-existing degenerative changes" that were "aggravated and advanced by the work injury." He recommended arthroscopic surgery and partial medial and lateral meniscectomies. In reaching his conclusion, Dr. Landsberg reviewed medical records from all providers, including Mr. Driver's family physician. Mr. Driver testified Dr. Landsberg examined him for approximately an hour and a half.

## Findings of Fact and Conclusions of Law

As in all workers' compensation actions, the employee has the burden of proof on the essential elements of the claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, Mr. Driver only has to present sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits in order to meet his burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court finds he carried this burden and is entitled to medical benefits.

In order for Mr. Driver to be eligible for benefits, he must have suffered an injury, as defined by the Workers' Compensation Law. Under the Workers' Compensation Law, an "injury" means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]" To constitute a viable claim for workers' compensation benefits the injury must be "by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14) (2016).

Here, there is no question that Mr. Driver suffered an injury as the term is defined by law. According to Mr. Driver, he tripped over or stepped on a board while walking across a dimly lit factory floor at Triumph and suffered injuries from the fall. Mr. Tidwell witnessed the incident and confirmed that Mr. Driver fell. Thus, the Court holds that Mr. Tidwell experienced "a specific incident" that occurred primarily in the course and scope of employment.[1] This finding, of course, does not carry the day for Mr.

---

[1] Mr. Driver requested that the Court sanction Triumph pursuant to Tennessee Rule of Civil Procedure 34A for failing to produce video footage of the accident. In light of the Court's ruling in Mr. Driver's favor, the Court denies Mr. Driver's request.

Driver. The real issue, as debated by the parties, is whether the injuries he suffered resulted from the accident itself or a pre-existing condition. With this in mind, the Court turns the question of medical causation.

Except in "the most obvious, simple and routine cases," an employee must establish by expert medical testimony that he or she sustained injury and a causal relationship exists between the injury and the employment activity. *Wheetley v. State*, 2014 Tenn. LEXIS 467, at *5 (Tenn. Workers' Comp. Panel June 25, 2014).

When an employee requests medical care for a work injury, the employer "shall designate a group of three (3) or more independent reputable physicians . . . from which the employee shall select one (1) to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(3)(A)(i). "The employer shall provide the applicable panel of physicians . . . to the employee on a form prescribed by the bureau[.]" *Id*. at § 50-6-204(a)(3)(D)(i). The authorized treating physician "selected from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3) shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." *Id*. at § 50-6-102(14)(E). When faced with competing expert opinions, the Court can consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Lamb v. KARM Thrift Stores, LLC,* 2017 TN Wrk. Comp. App. Bd. LEXIS 42, at *7 (Jul. 26, 2017).

In this case, Mr. Driver selected Dr. Tippens from a panel. However, Triumph failed to provide the panel on the form prescribed by the Bureau. Triumph, through Premise Health, provided the panel to Mr. Driver on a form developed by Triumph and/or Premise Health. The form did not contain fields for several important pieces of information including the employee's date of injury, email addresses for the medical providers, the date and time of the employee's scheduled appointment, and the employee's contact information. Additionally, the noncompliant panel form omitted text informing the employee of the Bureau's address and of the right to collect mileage reimbursement payments whenever attending a medical appointment required the employee to travel greater than fifteen miles one way. Because Triumph failed to utilize the proper form, it deprived Mr. Driver of this information. The Court, therefore, holds that the panel was invalid.

Dr. Tippens, whom Mr. Driver chose from the panel, determined that Mr. Driver's knee injury did not result from the workplace accident. Because Triumph failed to provide Mr. Driver a panel of physicians that complied with the law, the Court holds that his opinion does not carry a presumption of correctness. This failure is, however, unimportant because even the if the panel had met legal standards, the Court finds Dr. Lansberg's opinion more credible.

Dr. Landsberg, an orthopedic surgeon, is more qualified than Dr. Tippens to render an opinion. Dr. Tippens examined Mr. Driver only briefly several months after he was selected as from the panel. By contrast, Dr. Landsberg examined Mr. Driver for nearly an hour and a half and reviewed additional records. Additionally, lay testimony established that Mr. Driver was asymptomatic before his fall but had pain and swelling in his right knee from the moment he fell until an MRI revealed his meniscal tears.

Mr. Driver has presented sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits in establishing his entitlement to a panel of orthopedists. His request for a panel of orthopedists is granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Triumph or its workers' compensation carrier shall provide Mr. Driver with a panel of orthopedists.

2. This matter is set for a Scheduling Hearing on Monday, November 13, 2017, at 9:00 a.m. (CST). **You must call 615-741-2113 or toll-free at 855-874-0474 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.**

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED ON OCTOBER 16, 2017.**

_____
**Judge Joshua D. Baker**
**Court of Workers' Compensation Claims**

5

**APPENDIX**

Exhibits:
1. Mr. Driver's medical records (collective)
2. Mr. Driver's Affidavit
3. Injury Report Summary
4. First Report of Injury
5. Panel for Workman's Compensation Injuries
6. Dr. Landsberg's CV
7. Claim Reporting Guide
8. Mr. Driver's attendance calendar
9. Ms. Austin's Affidavit
10. Hand-drawn map, layout of Building 38

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Served Subpoena, James Tidwell
5. Employee's Pre-Hearing Statement
6. Employer's Pre-Hearing Position Statement
7. Agreed Exhibit List
8. Employee's Motion and Memorandum in Support of Request for Sanctions
9. Employer's Response in Opposition to Employee's Motion for Sanctions

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on October 16 , 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| R. Steven Waldron, Employee's Counsel | | | X | arlenesmith@comcast.net |
| Neil McIntire, Employer's Counsel | | | X | nmcintire@howell-fisher.com; fhodge@howell-fisher.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**